BIG STONE COUNTY BANK OF GRACEVILLE, BY A. J. VEIGEL, v. JAMES HOBAN AND OTHERS.[1]

October 26, 1928.

No. 26,922.

**Grantor was mentally incapable of executing a deed.**
    The evidence sustains the finding that the grantor in the deed in. controversy lacked sufficient mental capacity to execute a deed.

Deeds, 18 C. J. § 551 p. 443 n. 19.

Plaintiff appealed from an order of the district court for Traverse county, Flaherty, J. denying a motion for a new trial. Affirmed.
*Murphy & Johanson*, for appellant.
*Houston & Huber*, for respondents.

[1]Reported in 221 N. W. 644.

TAYLOR, C.

This is an action to determine adverse claims to a tract of 160 acres of land in Traverse county. The trial court made findings of fact and conclusions of law sustaining the contention of the defendants, and plaintiff appealed from an order denying a new trial.

The case turns upon the question whether Catherine Hoban, the grantor in a deed to defendant Mary Leonard, dated December 8, 1921, possessed sufficient mental capacity to execute a conveyance of the land. If she lacked such mental capacity, the disposition of the case made by the trial court was correct.

Catherine Hoban was the oldest of a family of 11 children. The family settled in Traverse county many years ago upon a homestead taken by the father and upon which the parents resided until their deaths and the children until they left to establish homes of their own. In 1883 Catherine filed a pre-emption claim to the land now in controversy located a mile from that entered by her father. A small cabin was built on this land by other members of the family, and Catherine resided therein for periods of a few days at a time prior to the making of proof, but always accompanied by other members of the family. Proof was made under this pre-emption entry and a patent for the land was issued to Catherine in 1884. At various times before her father's death mortgages were placed upon this land which were paid in due time. We mention the foregoing facts because plaintiff stresses them as tending to show that Catherine had sufficient mental capacity to acquire property. Apparently this land was the only property she ever possessed, and it was not managed or used by her but by her father or other members of the family. She lived as a member of her father's family until his death in 1900. The mother had died many years before and thereafter the household was managed by Catherine's younger sisters until the death of their father. After the father's death, Catherine lived with her sister, the defendant Annie Ruddy, for something over a year and thereafter until her death in 1924, at the age of 71, lived with her sister, the defendant Mary Leonard. The evidence is to the effect that she was never left alone, some member of the family always remaining with her.

The trial court found, among other things:

"The said Catherine Hoban, at the time the said instrument in writing was signed, was a person of a very low order of intelligence; that her mind was nearly a blank; that she exhibited none of the ordinary human characteristics; that she took no interest in human affairs; that she was a person of feeble mind; that her mind and intellect had never developed, and the evidence clearly shows, and the court finds the facts to be that her intellectual development was of an order lower than an ordinary child of five years of age; that her intellectual capacity was insufficient for her to comprehend the meaning of the conveyance of land; that she did not understand nor comprehend the consequences which would follow the execution and delivery of a deed; that she did not intend, and was incapable of intending, and was incapable of comprehending the execution of a deed."

The only real question presented is whether this finding is sustained by the evidence. We shall not rehearse the evidence bearing upon the question of mental capacity. We have examined it and are satisfied that the court could find therefrom that Catherine Hoban lacked sufficient mental capacity to comprehend the purpose of executing the deed, or its effect, or the consequences which would follow from its execution, and was therefore justified in declaring it a nullity. Crane v. Veley, 149 Minn. 84, 182 N. W. 915; Trost v. Brey, 156 Minn. 242, 194 N. W. 617.

Two or three of the rulings on the admission of testimony are questioned, but we find no error.

Order affirmed.